SAMUEL B. HEARD AND OTHERS *v.* MARQUIS G. BREWER AND
OTHERS.

The general rule is that the right of lien, which is in the nature of a pledge, attaches only to property which has come into the *actual* possession of the bailee, factor or other person who claims the benefit of it. But a merely constructive possession may, in some cases, give a lien, although the actual possession is in another.

Thus, where the plaintiff, a commission merchant, accepted a draft drawn on him upon advices from the drawer that he would make a shipment of goods to him to cover the amount, and the drawer shipped goods, with the clear intention on his part of appropriating them to the plaintiff for his security, *Held,* that the property in the goods passed to the plaintiff upon their shipment, and from that time the plaintiff was in constructive possession, and on their arrival was entitled to the actual possession as against an attaching creditor of the shipper.

In the absence of a bill of lading, the intention to vest the property in the goods in the consignee upon the shipment, so as to give him a constructive possession, subject only to the equitable right of stoppage in *transitu,* may be inferred from other documents, such as receipts or orders, or by the correspondence which has taken place between the parties.

A factor having a lien upon goods for the amount of his advances, can, in an action against a creditor of his principal, who has taken the goods under attachment, recover only the value of his special property in the goods. He is not entitled to a judgment for the whole value of the goods.

APPEAL by defendants from a judgment of the First District Court. The facts are stated in the opinion.

*Brown & Estes,* for appellants.

*Cheney & Dixon,* for respondents.

BY THE COURT.*—DALY, CH. J.—The plaintiffs disclaimed upon the trial any title to the goods as owners or purchasers, but put their right to recover upon the ground that they were the consignees, and had a lien upon the property by the accept-

---

* Present, DALY, CH. J., LARREMORE and J. F. DALY, JJ.

ance of a draft, drawn upon them by the consignors, prior to the shipment of the goods, and which draft they subsequently paid. The sole question, therefore, presented upon this appeal is, whether they had such a lien when the property was attached in the suit brought against the consignor by the defendants Brewer & Kline.

The general rule is, that the right of lien, which is in the nature of a pledge, attaches only to property which has come into the *actual* possession of the bailee, factor or other person, who claims the benefit of it; but this, like all general rules, is subject to qualifications, for a right of lien may attach to a thing which is incapable of possession, or where the possession is simply constructive, the actual possession being in another. Of the latter class is the lien which a consignee or factor has upon goods for advances made, or agreed to be made, upon them, and which attaches the moment they are shipped, or consigned to him, subject only to the right of a stoppage *in transitu*, in the event of his insolvency before they come into his possession; of which the early case of *Krubach* v. *Craig* (3 Term R. 119; Id. 783), is a conspicuous example. The mere circumstance that a consignor ships goods to a factor for sale, and is in the habit of drawing upon the factor against the proceeds, does not of itself give the factor any right to anticipate the possession, or to keep it against the unpaid consignor (*Patten* v. *Thompson*, 5 M. & S. 356), but it is otherwise if bills are accepted upon the credit of a particular consignment, for then there is a specific pledge of the property, and a transfer of it to the factor takes place by the delivery or indorsement to him of the bill of lading, so that it is constructively in his possession, and he has a lien upon it for his indemnity, the moment it is shipped or consigned to him (*Anderson* v. *Clarke*, 2 Bing. 20; *Haille* v. *Smith*, 1 Bos. & Pul. 563; *Walley* v. *Montgomery*, 3 East, 585; *Feise* v. *Wray*, Id. 93; *Edwards* v. *Brewer*, 2 Mees. & W. 375; Abbot on Shipping, 333, 8th ed.). In the absence of a bill of lading, the intention to vest the property in the goods in the consignee upon the shipment, so as to give him the constructive possession, subject only to the equitable right of stoppage *in transitu*, may be inferred from

Heard v. Brewer.

other documents, such as receipts or orders, or by the correspondence which has taken place between the parties (*Bryant* v. *Nix*, 4 Mees. & W. 791). The question generally is, whether there was an appropriation or pledge of the specific property to the factor at the time of shipment, in consideration of the advances made or agreed to be made; for though a factor may make advances or accept bills upon advices from his principal that he has and will consign to him a cargo to cover the liabilities the factor has assumed, and the principal, instead of doing so, sends the bill of lading to another person as consignee, who delivers it to the factor to act for him in the business, by means of which the factor gets possession of the cargo, the latter has no lien upon it for the liabilities he has incurred, but holds it as the agent of the consignee from whom he received the bill of lading (*Bruce* v. *Wait*, 3 Mees. & W. 15). I refer to this particular case to show that it is the intention of the consignor at the time of shipment which governs, and this usually appears by his sending the bill of lading to the consignee who has incurred or agreed to assume liabilities in respect to the particular shipment, and when he has done this, the possession of the goods passes constructively to the consignee, and his lien attaches, even in a case where the ship in which they were was prevented from sailing by an embargo, and while thus detained, the consignor became bankrupt, and the goods were delivered into the possession of his assignees (*Haille* v. *Smith*, 1 Bos. & Pul. 563); and, as I have said, the transmission of other documents or the correspondence of the parties may show that there was a change of property *instanter* when the goods were shipped.

The law, as thus stated, is well settled, and we now come to the application of it to the facts of the case.

The plaintiffs are commission merchants in this city, and previous to the particular shipment out of which the controversy in this case arose, one Serverson, in Norfolk, Va., had shipped produce to the plaintiffs, and was in the habit of drawing upon them, and had done so several times. On the 12th of July, 1870, he drew a draft upon the plaintiffs for $250 which, as appears from his letter, he did with the consent of the

brother of one of the plaintiffs, who was in Norfolk. On the 14th of July, 1870, the draft was received by the plaintiffs, and they accepted it under the expectation of Serverson's shipping goods to cover it, and paid it on the 24th of July. On the 13th of July, the day after the draft was sent, Serverson wrote to the plaintiffs, advising them that he had that day shipped to them 45 packages of produce, and that he had on the day previous drawn the draft upon them for the $250; adding that he would try and buy "stuff" for them every steamer. On the following day, the 14th, he wrote to acknowledge the receipt of their account and their check for an amount of sales made, which he inclosed back to them, saying that, as he had advised them on the previous day, he had drawn upon them, and in the close of the letter, he requested them to protect the draft, and that he would ship on Saturday, which was the 16th.

On Saturday, the 16th, the goods were shipped, a part of which were taken by the defendants upon the attachment. It does not appear that they were accompanied by any bill of lading. They were sent by steamer from Norfolk, and marked S. 14; the S. indicating Serverson and the figure 14 the number of the bin upon the steamer's wharf here, where goods consigned to the plaintiff were placed when they were put off the boat. The shipment, however, was accompanied by a letter from Serverson, containing an invoice of items, and advising the plaintiffs that he had that day shipped to them the goods enumerated in the letter, and telling them that they would see that that shipment made four that had been sent to them, amounting at the least at Norfolk to $296, which he says will more than cover the draft of $250, and the letter closes by advising them that he will continue to make shipments to them as long as he can make a profit, and that he will try to arrange the matter in Norfolk with Mr. W. F. Heard, the brother before mentioned, and who had a house in Norfolk; the meaning of which I infer to be that he would not draw upon the plaintiffs except with the approbation of W. S. Heard, whose consent, it will be remembered, was obtained before Serverson drew upon the plaintiff for the $250.

The defendants Brewer and Kline commenced an action against Serverson for a debt due to them by him, and being a non-resident, they obtained an attachment against his property which was placed in the hands of the other defendant, Smith, a marshal, who seized under it a portion of the goods embraced in this shipment of the 16th of July; the most of which was taken from a bin on the dock " under the letter S. with a diamond," or as it may be figured ⟨Ⓢ⟩, and the residue as the goods were being landed from the steamer; the whole of which were subsequently sold by Smith under the attachment. The plaintiffs brought this action against the plaintiff in the attachment and the marshal who made the seizure, and recovered the value of the property taken, $82 87.

I think the conclusion upon this state of facts must be, that Serverson made this particular shipment, as well as the three that preceded it, with the intention that the property should pass at once to the plaintiffs for their security and indemnity in accepting his draft for $250. He had obtained, as I have said, the consent of the brother of one of the plaintiffs, who had a house in Norfolk, to make the draft, and being drawn with his approbation, Serverson no doubt assumed that the draft would be, as it was, accepted by the plaintiffs. His letter to the plaintiffs shows that it was his intention to ship produce to them by every steamer, to cover the amount of this draft, and when he shipped sufficient for that purpose, he advised them that the four shipments, of which the one in controversy was the last, would more than cover, as they did, the amount of the draft. All of this shows, in my judgment, a specific appropriation of the property to the plaintiff, in each of the four shipments, for the liability to be assumed on their part by the acceptance of the draft. The draft was accepted on the 14th, and the last of the four shipments was made on the 16th; Serverson probably did not then know that the plaintiffs had accepted it, but it is evident from the fact that he assumed that they would, or had, as they did, accept it. It may be that one or more of the shipments were made before the draft was sent, but if they were, the check which the plaintiff sent to him was returned by Serverson, in consequence of his having sent the draft,

showing the intention on his part to appropriate to the plaintiffs the whole of the goods in these four shipments, or a specific pledge of this particular property to the plaintiffs, to indemnify them for a liability to be assumed, and which they did assume and discharge by the payment of the draft.

It is not like the case of a principal who consigns goods to a factor for sale and draws against the proceeds, in which case the factor's lien is upon the proceeds or upon the goods in his possession for his security, if he has accepted or paid the draft. But it is the case of a draft upon a factor to be covered by goods to be sent, and which goods, the moment they are shipped, vest absolutely in the factor as his security or indemnity for the prior acceptance, and subsequent payment of, the draft. It is somewhat in this respect like the case of *Virtue* v. *Jewell* (4 Camp. 31), in which the consignor was indebted to the consignees on a balance of account and upon drafts of his which they had accepted; on account of which indebtedness he consigned them a quantity of barley. In that case it was held that the property in the barley vested absolutely in the consignees, having been consigned to them on account of the indebtedness, even though they failed to pay the acceptances. "The circumstance," said Lord Ellenborough, "that the consignee was indebted on a balance of accounts divested him of all control of the barley from the *moment of its shipment*." Though there is some difference in the facts, the principle which governs in both cases is the same. In the one, there was an indebtedness upon a balance of accounts. In the other, the plaintiffs accepted the draft with the expectation of the drawer's shipping goods to cover it. The goods in controversy were shipped by the drawer for that purpose. They were shipped upon the assumption that the draft would be accepted, and before they were sent, the draft had been accepted. The moment, therefore, that they were shipped, the property passed to the plaintiffs, and it was constructively in their possession and subject exclusively to their control when the marshal attached it as the property of Serverson.

The judgment should be affirmed.

J. F. DALY, J.—I concur in the views of the Chief Justice, set forth in his learned opinion, so far as the right of the plaintiffs to recover under their lien for advances is concerned, but I regard the recovery of $82 87 as excessive. The balance due the plaintiffs, as testified to by them, was $64 19, and as this was the extent of their special property in the goods, it should be the extent of their recovery. In *Fitzhugh* v. *Wiman* (9 N. Y. 565), it was held, that in an action by the forwarder making advances and entitled to his freight, brought against another who takes the goods wrongfully from the plaintiff, but actually delivers them to the rightful consignee or owner before the suit was brought, the plaintiffs cannot recover the actual value of the goods, and the value to be assessed should be the value of their special property in the goods. It was said by Judge Johnson, that if the goods had not been so delivered by the defendant to the rightful owner or consignee, they would have been entitled to a judgment for the *whole* value. This, of course, is founded in reason: the forwarder had to deliver the goods or answer for his default to the extent of their whole value; if a wrongdoer take them from him, he is entitled to recover the whole value himself, in order to answer to his consignee; but if the wrongdoer himself deliver them to the consignee, the forwarder has only the right to the demand he would have against the latter.

In this case, the goods were seized by the marshal under an attachment against the principal, who was a non-resident, and was indebted to the parties obtaining the attachment upon a balance due on a draft. The value of the goods was $82 87; the difference between that value and the plaintiffs' special property in the goods, under their lien, $64 19; which difference amounted to $18 68, certainly belonged to the plaintiffs' principal in Norfolk, and was subject to attachment for his debts. By the attachment it was applied to them.

The judgment should be modified, so as to make it a judgment for $64 19. And no costs should be allowed to either party on this appeal.

The other judges concurred.

Judgment modified accordingly.